UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENG REN SILK ROAD INVESTMENTS LLC,
HENG REN INVESTMENTS LP,
derivatively on behalf of
SINO AGRO FOOD INC.

                            Plaintiffs,

       -against-

SINO AGRO FOOD INC.,
LEE YIP KUN SOLOMON,
TAN POAY TEIK,
CHEN BOR HANN,
LIM CHANG SOH,

                        Defendants,

       -and-

SINO AGRO FOOD INC.

                     Nominal Defendant.

Case No.

**VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT**

Plaintiffs Heng Ren Silk Road Investments LLC and Heng Ren Investments LP ("**Plaintiffs**"), by and through their undersigned attorneys, submits this Verified Shareholder Derivative Complaint against Sino Agro Food, Inc. ("**SIAF**" or the "**Company**"), Lee Yip Kun Solomon ("**Defendant Lee**"), Tan Poay Teik ("**Defendant Teik**"), Chen Bor Hann ("**Defendant Hann**"), and Lim Chang Soh ("**Defendant Soh**")  (Defendants Lee, Teik, Hann, and Soh together as the "**Individual Defendants**").  Plaintiffs allege the following based upon information and belief, except as to those matters concerning Plaintiffs, which are alleged upon personal knowledge.  Plaintiffs' information and belief is based on, among other things, the investigations conducted by themselves and similarly situated shareholders, such investigations including, among other things, review and analysis of various governmental filings both in the U.S and China.

## NATURE OF ACTION

1.      This is a shareholder derivative action brought for the benefit of SIAF and its shareholders.  SIAF, a Nevada corporation, is an agriculture technology and natural food holding company with principal operations in the People's Republic of China ("China").  The Company acquires and maintains equity stakes in a portfolio of joint venture businesses that SIAF forms according to its core mission to produce, distribute, market and sell natural, sustainable protein food and produce, primarily seafood and beef, to the rapidly growing middle class in China.  SIAF trades on the OTC QX, is registered and reports to the United States Securities and Exchange Commission ("SEC"), and upon information and belief has raised significant funds through public offerings within the U.S.

2.      This derivative action is brought seeking equitable relief and damages to remedy, inter alia, (i) breaches of fiduciary duties by the Individual Defendants, including, inter alia, the gross mismanagement of SIAF and unexplained material default of its obligations under a commercial loan agreement, (ii) the misleading and false statements (including material omissions) that the Individual Defendants issued (or failed to issue) to its Board, its shareholders, the investing public, and governmental regulators, and (iii) the unauthorized issuance of new shares to pay debts that have diluted shareholder ownership and oppressed shareholders.

3.      Furthermore, the Individual Defendants' gross mismanagement and unexplained abandonment of certain business lines are methodically stripping the Company of its remaining real value to the detriment of SIAF and its shareholders.  Upon information and belief, the Individual Defendants have begun the process of purposefully diluting existing shareholders equity in the Company, and on February 27, 2019 applied to delist SIAF's shares from the Merkur Market on the Oslo Stock Exchange in Norway, after being found by the Exchange to

have breached duties to disclose inside information to the market, among other disclosure obligations.  These actions will make it easier for the Individual Defendants to eventually "go dark" in the United States leaving SIAF and its shareholders in imminent danger that their shares will have no value and a slim chance to recover the same, a scenario that occurs all too often in cases with facts similar to those here.

    4.    This action is an attempt to stop the above from happening by, inter alia, removing the Individual Defendants from their managerial and directorial positions from the Company, and appointing an independent receiver to, inter alia, a) shed light on the downward spiral and help prevent any further mismanagement, breaches of fiduciary duties, violation of law, and diminution of value, b) to ensure the status quo and preservation of the Company, its businesses, and its assets, and c) to appoint a new management team to assume control of the Company's day-to-day operations and attempt to restore value to SIAF and its shareholders .  This action additionally seeks damages stemming from the Individual Defendants' violations of both state and federal law.

    5.    The appointment of an experienced, independent receiver would allow for a professional review of SIAF's past and current financial condition, such as an inspection of its books and records to explain the significantly inconsistent reporting authorized by the Defendants and filed with regulators in the U.S. and China (discussed infra).  Furthermore, the appointment of a receiver would allow this Court, shareholders and investors to receive a true and accurate disclosure of financial information that they rightly deserve, allowing them to make responsible investment decisions.  Without this remedy, the Individual Defendants' possession of super-voting shares (as well as Defendant Lee's current roles as Chairman of the Board, CEO, President, and CFO) will deny shareholders these deserved disclosures.  This is especially

pronounced here where the Company and the management team are physically operating in China beyond the immediate reach of US regulators.

## PARTIES

6.      Plaintiff Heng Ren Silk Road Investment LLC is a limited liability corporation incorporated under the laws of the Cayman Islands.  Heng Ren Silk Road Investments LLC is currently and has at all material times of this action been a shareholder of SIAF.

7.      Plaintiff Heng Ren Investments LP is a limited partnership incorporated under the laws of the Commonwealth of Massachusetts, U.S.A.  Heng Ren Investments LP is currently and has at all material times of this action been a shareholder of SIAF.

8.      Nominal Defendant SIAF is a Nevada corporation with its principal executive offices located in China.  SIAF has operational offices in multiple countries including the US.  SIAF securities trade on the OTC QX market, and the Company reports to the SEC. SIAF transacts significant business in the State of New York, and the Company's corporate legal counsel is located in the City and State of New York.

9.      Defendant Lee is the current Chairman of the Board of Directors of SIAF as well as the President, CEO, and CFO of the Company.  Upon information and belief, Defendant Lee is an Australian citizen.

10.     Defendant Teik is a current Director of SIAF with managerial and executive influence and power.  Upon information and belief, Defendant Teik is a Malaysian citizen.

11.     Defendant Hann is a current Director of SIAF with managerial and executive influence and power.  Upon information and belief, Defendant Hann is a Taiwanese citizen.

12.     Defendant Soh is a current Director of SIAF with managerial and executive influence and power.  Upon information and belief, Defendant Soh is a Malaysian citizen.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. 1332 because the parties are citizens of different states and the amount of controversy exceeds $75,000.00.  Furthermore, this Court has subject matter jurisdiction because Plaintiffs have alleged violations of federal law.

14.     This Court has jurisdiction over each Defendant named herein because SIAF is a corporation that conducts and transacts business in this District, and otherwise has sufficient minimum contacts with the U.S. and this District.  The Individual Defendants through SIAF as well as individually also have sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.  Furthermore, this Court has jurisdiction over each Defendant based on FRCP 4(k)(1) and CPLR 302, due to the Individual Defendants' contacts with this District via SIAF and individually.  Moreover, this Court has jurisdiction over all Defendants pursuant to FRCP 4(k)(1)(c) and Section 27 of the Exchange Act (15 U.S.C § 78aa) due to the Exchange Act violations alleged herein.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because each of the Defendants are subject to personal jurisdiction of this District with respect to this action.

16.     In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## FACTUAL ALLEGATIONS

### SIAF Background

17.     SIAF, a Nevada corporation, is an agriculture technology and natural food holding company with principal operations in the China.  The Company acquires and maintains equity stakes in a portfolio of joint venture businesses that SIAF forms according to its core mission to produce, distribute, market and sell natural, sustainable protein food and produce, primarily seafood and beef, to the rapidly growing middle class in China.

18.     The Company's corporate structure including its control and ownership over various subsidiaries is as follows:



19.    The Individual Defendants, through the creation of class A-share issuances, have absolute power and super majority control over the Company, and are disconnecting from shareholders, evoking the very real likelihood that SIAF is preparing to "go dark."

20.    Since late 2018, after the Company first received a default notice with regard to a commercial loan agreement the Company entered into (discussed infra), SIAF management suspiciously rejected a live quarterly conference call, and instead required pre-screened and pre-approved shareholder questions only.  SIAF management stated prepared remarks to the edited questions and refused to directly discuss with shareholders of the Company the loan default and its significant and material consequences, and other acute issues that have led to not only SIAF being charged by the Oslo Stock Exchange in November, 2018 for failing to disclose to the market certain inside information about the Company's scheme to issue common

shares as security for various loans, but ultimately SIAF's February, 2019 notice of delisting from the Oslo Stock Exchange as well.  SIAF management's efforts to dodge direct engagement with shareholders has prevented the shareholders from allaying their serious and legitimate concerns regarding, inter alia, the mismanagement of the Company, its financial health relative to the default notice, and the future value of equity ownership in SIAF.

21.     Defendant Lee, with just an 8.38% equity ownership interest in the Company, has an incredible super majority voting right interest by himself, with 61.67% of the Company's voting rights.  Defendant Lee, as Chairman and with such super majority voting power, cannot be outvoted and thus cannot be ousted from his positions.  The officers and directors of the Company (including Defendant Lee) have a 12.67% equity ownership interest in the Company, but have 82.17% of the Company's voting rights.

22.     Such absolute and unchecked power and unbridled control over the Company has shielded the Individual Defendants thus far from any consequences of their continued wrongful conduct, breaches of fiduciary duties, and violations of securities laws as outlined herein.

**Breaches Due to Mismanagement**

23.     Because of their positions as officers and/or directors of the Company and their ability to control the business and corporate affairs of the Company, the Individual Defendants owed SIAF the fiduciary obligations of good faith, trust, loyalty, and due care, and were required to use their utmost ability to control and manage the Company in a fair, just, honest and equitable manner.  The Individual Defendants were required to act in the best interests of the Company so as to benefit the Company, and not in furtherance of their personal interests or benefit.

24.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of SIAF, were able to directly and/or indirectly, exercise control over the wrongful acts complained of herein.

25.     The Individual Defendants have breached their fiduciary duties by failing to take the necessary steps to appoint certain directorial and managerial positions of the Company, leaving such positions either vacant, or allowing Defendant Lee to assume such unchecked executive functions as SIAF's Chairman of the Board, President, CEO, and CFO. The unfilled vacancies include an independent director position, which has been unfilled since November, 2018 and the Company's critically-important CFO position, which has been vacant since December, 2018. Upon information and belief, Defendant Lee has self-appointed himself as CFO.

26.     The Individual Defendants have breached their fiduciary duties by directing and/or allowing the Company to default on a promissory note issued by Euro China Capital AB ("ECAB") in the principal amount of $33,300,000.00. The underlying agreement contains a clause conferring the State of New York with exclusive jurisdiction.  The notice of default was received by the Company on December 12, 2018 and specified that SIAF was in default due to, inter alia, failure to make repayments on the note as prescribed by its terms. Based upon information and belief, the Defendants have taken no material steps to ameliorate this default.

27.     The Individual Defendants have breached their fiduciary duties by directing and/or allowing SIAF to abandon certain of its essential business lines, engaging in gross mismanagement and wasting corporate assets.  The Defendants have seemingly and inexplicably abandoned their cattle and meat trading business that was previously touted as a

highly successful diversification of the Company with a potential IPO through the Company's Macau EIJI Company Ltd ("MEIJI") subsidiary.

28.     The Individual Defendants have breached their fiduciary duties by, upon information and belief, wrongfully increasing the authorized shares of common stock from 27,000,000 to 50,000,000 without a meeting of the shareholders and without authorization from the Company's Articles of Incorporation.  Since this unilateral action, SIAF's share price has fallen 92% from $2.27 to $0.18 as of March 22, 2019.  The Individual Defendants further breached their fiduciary duties by, upon information and belief, issuing new shares on multiple occasions in violation of certain anti-dilution clauses by which the Company was bound.

29.     The Individual Defendants breached their fiduciary duties by failing to include in certain recent filings and public statements the required cautionary statements identifying important and meaningful factors that could cause the actual results to differ materially from those in their forward-looking statements.  By failing to include the cautionary disclaimers, the Individual Defendants disqualified the Company from claiming Safe Harbor protections and put the Company at risk of securities fraud.

30.     Moreover, on November 2, 2018, the Oslo Stock Exchange imposed a violation charge on SIAF of approximately $80,000 due to SIAF's failure to disclose inside information on arrangements to issue common shares as security for various loans and trade finance facilities pursuant to certain requirements to trade on the Merkur Market.  SIAF further breached its obligations to the Exchange by not disclosing increases of its authorized share capital and issuances of new common shares. [1]  SIAF subsequently, in February 2019, noticed its delisting from the Oslo Stock Exchange.

---

[1] The Oslo Stock Exchange passed the following resolution:

**Misleading Statements and False Information Regarding Tri-Way**

31.     SIAF owns a 36.6% stake in Tri-Way Industries Ltd. ("TRW"), a Hong

Kong holding company, which in turn 100% owns Jiangmen City A. Power Fishery

Development Co Ltd ("JFD"), a China holding company.  In its SEC filings and investor

materials, SIAF represented that JFD was the 100% owner of five "aqua farms" that produced

certain fish and other seafood within China.  The ownership structure according to SIAF in its

SEC filings was as follows:



32.     However, investigation into certain filings by SIAF to the State

Administration for Industry and Commerce ("SAIC") in China reveals that the true owners of

---

*"A violation charge is hereby imposed on Sino Agro Food Inc. for material breaches of the Continuing Obligations of companies admitted to trading on Merkur Market in an amount of NOK 700,000, cf. section 12.3 of the Continuing Obligations. The decision may be appealed to the Merkur Market Appeals Committee, cf. section 14 of the Continuing obligations of companies admitted to trading on Merkur Market."*

Aqua Farm 2 is an unknown individual by the name of Gao Zuanming, who, upon information and belief, has no connection to entities referenced in the above chart - JFD, TRW, or SIAF.

33.     Similarly, SAIC filings show that the owners of Wholesale Center 1, a marketing, distribution, seafood processing and sales complex, are unknown individuals Zhou Jianfeng (51% ownership interest) and Zhou Haiyan (49% ownership interest).  Upon information and belief, neither Zhou Jianfeng nor Zhou Haiyan is affiliated or connected to JFD, TRW, or SIAF.

34.     Moreover, SAIC filings reveal material inconsistencies among revenue reported to the SAIC in China, revenue reported to the SEC, and in Press Release to the U.S. shareholders and investors in the same time periods.  SIAF reported to the SAIC in China that revenue from the five Aqua Farms in 2017 was $447,080.00.  In contrast, SIAF reported to the SEC $17 million in revenue for wholly owned Capital Award Inc., which provides technology and services to TRW. SIAF also reported in its Press Release a contribution of $12 million from TRW to SIAF's income (based on TRW's total income of $32.8 million and SIAF's 36.6% ownership). In contrast, in its 2017 10K SEC filing, SIAF reported that TRW was disposed from the Company in October 2016 and therefore generated no income in 2017.

35.     Similarly, in 2017, SIAF reported that the total asset value for TRW's Aqua Farms 1-5 was approximately $310 million, based on an "independent appraisal" allegedly performed by The Dun and Bradstreet Corporation.  In reports to China's SAIC, however, SIAF reported that in 2017 the total asset value of TRW's Aqua Farms 1-5 was $12.3 million.

36.     In an SEC 10-Q filing on August 14, 2018, SIAF restated its commitment to a dividend policy, which was first announced earlier in 2018, of US $0.05 per share "payable during Q4 2018," and in 2019 "$0.05 per share will be declared and paid semiannually" for a

total of US $0.10 per share.  Four months later in SIAF's prepared December "Q&A" session, on

the heels of the default notice, management stated "In retrospect the dividend announcement was

made prematurely."

37.     In an October 5, 2018 press release, SIAF stated that TRW was pleased to

announce a share distribution to SIAF and its shareholders on November 14, 2018 at a reportable

value of $1.33 per share.  In the December remarks, SIAF management stated TRW's share

dividend would require an F-1 filing to the SEC, which they represented as "near completion to

submit." It has still not been filed after more than three months.

38.     Despite the massive loan default, the recent Norway delisting and the

impending US delisting, SIAF is now dangling to investors the prospect of a 2020 IPO for TRW

on the Stock Exchange of Hong Kong (HKEX).  According to SIAF's 2017 10-K filed with the

SEC, "A team of qualified HK licensed CPA's, securities attorneys, and Tri-way staff continue

to organize and compile all Tri-way financial and legal records, past and present, throughout the

pre-IPO process in accordance with its application to the exchange and regulatory authorities in

concert with its financial advisors providing guidance throughout the pre-IPO process."

**Derivative Allegations and Demands to the Board**

39.     Plaintiffs bring this action derivatively in the right and for the benefit of

SIAF to redress the wrongful and illegal conduct outlined herein by the Individual Defendants.

40.     Plaintiffs will adequately represent the interests of SIAF and its

shareholders in enforcing and prosecuting its rights.

41.     SIAF is named as a nominal defendant in this action solely in a derivative

capacity.  This is not a collusive attempt to confer jurisdiction on this Court that it would not

otherwise have.  Prosecution of this action, independent of the Individual Defendants, is in the best interests of SIAF and its shareholders.

42.     Any such demand by Plaintiffs to the SIAF Board of Directors would be futile due to a majority of the Directors being interested in the alleged violations of law contained herein.  Moreover, Defendant Lee's absolute voting power over the Company (61.67% voting rights) and the Directors' combined 82.17% voting rights of the Company would make any such demand to the Board futile.

## FIRST CAUSE OF ACTION
### (Appointment of a Receiver)
### (As to Nominal Defendant SIAF)

43.     Plaintiffs repeat and reallege each of the foregoing allegations as if more fully set forth at length herein.

44.     Due to the wrongful conduct herein, which includes, inter alia, the abandonment of business lines and operations, failure to cure a massive loan default, failure to cure financial reporting leading to sanctions for violations by the Norway regulators, failure to be transparent with financial details of the Company, failure to properly manage the Company in many material ways, and the violations of federal securities laws, an independent receiver is necessary and prudent to (a) ensure the company assets are preserved; (b) prevent the further dissipation of the Company and its assets; (c) secure the current true financial condition of the company; (d) take the necessary steps to ensure the Individual Defendants are removed from the Company; and (e) appoint a new management team to run the Company's day-to-day operations in line with proper corporate governance, company by-laws, articles of incorporation and rules of the SEC and restore value to the Company and its shareholders.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duties)
### (As to the Individual Defendants)

45.     Plaintiffs repeat and reallege each of the foregoing allegations as if more fully set forth at length herein.

46.     As outlined herein, the Individual Defendants, due to their positions and control over SIAF, owed and continue to owe SIAF, the Board, and the shareholders certain fiduciary obligations.

47.     The Individual Defendants breached their fiduciary obligations in that the Individual Defendants:

a.     failed to disseminate accurate and truthful information to the Company, its shareholders, the investing public, and certain governmental regulatory bodies;

b.     failed to prudently manage the Company in a way that put the best interests of the Company first, including by (i) increasing the amount of common stock of the Company in violation of the Company's Articles of Incorporation and under certain agreements the Company is bound by, (ii) abandoning certain business lines of the Company, (iii) allowing certain managerial roles to be left vacant, and by allowing Defendant Lee to de facto take over such vacant positions, (iv) allowing the Company to default on a promissory note issued by ECAB, and (v) by failing to include in certain recent filings and public statements the required meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in their forward-looking statements.

48.     Due to the Individual Defendants' breaches, SIAF has been substantially harmed.

## THIRD CAUSE OF ACTION

### (Violation of Section 10(b) of The Exchange Act and Rule 10b-5)
### (As to All Defendants)

49.     Plaintiffs repeat and reallege each of the foregoing allegations as if more fully set forth at length herein.

50.     The Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the various false statements and omissions outlined herein, which they knew to be false or deliberately disregarded in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51.     The Individual Defendants failed to disclose to the Board, its shareholders, or the investing public the various information concerning their wrongful and fraudulent conduct as outlined herein, causing the Company's securities to be artificially inflated and then drop by nearly [90%] upon discovery of the misstatements and omissions.

## FOURTH CAUSE OF ACTION

### (Violation of Section 20(a) of The Exchange Act)
### (As to All Defendants)

52.     Plaintiffs repeat and reallege each of the foregoing allegations as if more fully set forth at length herein.

53.     The Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, the Individual Defendants knew the adverse non-public information regarding the Company's business practices.

54.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

55.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace.

56.     The Individual Defendants did cause the Company to disseminate false information and further failed to disclose the wrongful and fraudulent scheme by the Individual Defendants in transferring assets and value out of the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand that judgment be entered in favor of SIAF as follows:

(a) **on the first cause of action (appointing a receiver)**, judgment against Defendant SIAF, for the following relief:

 i. appointing an independent receiver to assume full control over the Company, its assets, and employees;

 ii. for attorneys' fees and costs; and

 iii. for such other and further as this Court may deem equitable and just.

(b) **on the second cause of action (breach of fiduciary duties)**, judgment against Defendants Lee, Teik, Hann, and Soh, jointly and severally, for the following relief:

 i. compensatory damages in an amount to be determined at trial;

 ii. consequential damages in an amount to be determined at trial;

       iii.    punitive damages in an amount to be determined at trial;

       iv.    attorneys' fees and costs;

       v.    such other and further relief as this Court may deem equitable and just.

**(c)** **on the third course of action (Violation of Section 10(b) of The Exchange Act and Rule 10b-5)**, judgment against Defendants Lee, Teik, Hann, and Soh, jointly and severally, for the following relief:

       i.    compensatory damages in an amount to be determined at trial;

       ii.    consequential damages in an amount to be determined at trial;

       iii.    attorneys' fees and costs;

       iv.    such other and further relief as this Court may deem equitable and just.

**(d)** **on the fourth cause of action (Violation of Section 20(a) of The Exchange Act)**, judgment against Defendants Lee, Teik, Hann, and Soh, jointly and severally, for the following relief:

       i.    compensatory damages in an amount to be determined at trial;

       ii.    consequential damages in an amount to be determined at trial;

       iii.    attorneys' fees and costs;

       iv.    such other and further relief as this Court may deem equitable and just

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all issues in this action.


Dated: March 26, 2019


Michael D. Cilento, Esq.
Zhenling Zhang, Esq.
The Seiden Group
469 Seventh Ave., Fifth Floor
New York, New York 10018
mcilento@seidenlegal.com
(646) 766-1723
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENG REN SILK ROAD INVESTMENTS LLC,<br>HENG REN INVESTMENTS LP,<br>derivatively on behalf of<br>SINO AGRO FOOD INC.<br><br>                 Plaintiffs,<br><br>      -against-<br><br>SINO AGRO FOOD INC.,<br>LEE YIP KUN SOLOMON,<br>TAN POAY TEIK,<br>CHEN BOR HANN,<br>LIM CHANG SOH,<br><br>               Defendants,<br><br>      -and-<br><br>SINO AGRO FOOD INC.<br><br>           Nominal Defendant. | Case No.<br><br>**VERIFICATION** |

**PETER HALESWORTH**, being duly sworn, deposes and says that deponent is an officer of the Plaintiff entities in this action and has read this Complaint; deponent knows its content and knows that it is true to the best of deponent's knowledge, except as to those matters stated to be upon information and belief, and as to those matters, deponent believes them to be true.

                                  Peter Halesworth, on behalf of
                                  Heng Ren Silk Road Investments LLC
                                  Heng Ren Investments LP

Sworn to me before this _26_ day
of March 2019

Notary Public
5 Bryant st
Dedham, MA 02026

GITA BAHERY
Notary Public
Commonwealth of Massachusetts
My Commission Expires September 10, 2021