**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ARNE H. FREDLY,<br>HENG REN SILK ROAD INVESTMENTS<br>LLC, HENG REN INVESTMENTS LP,<br>derivatively on behalf of SINO AGRO FOOD,<br>INC.,<br><br>             Plaintiffs,<br><br>   v.<br><br>SINO AGRO FOOD, INC., LEE YIP KUN<br>SOLOMON, TAN POAY TEIK, CHEN BOR<br>HANN, LIM CHANG SOH.,<br><br>             Defendants,<br><br>    and<br><br>SINO AGRO FOOD, INC.,<br><br>             Nominal Defendant | Case No. 19-cv-02680 (JMF)<br><br>**MEMORANDUM OF LAW IN<br>SUPPORT OF MOTION FOR<br>FINAL APPROVAL OF<br>DERIVATIVE SETTLEMENT** |

## **TABLE OF CONTENTS**

I.    FACTUAL BACKGROUND ................................................................................. 1

    A.    The Settlement Negotiations ...................................................................... 1

    B.    The Reforms Contemplated By The Proposed Settlement ..................................... 1

    C.    Provisions of Lee's Shares To The Shareholder-Plaintiffs .................................... 2

    D.    Developments Since The Preliminary Approval Motion ....................................... 2

    E.    Response From Shareholders ...................................................................... 5

    F.    The Parties' Prior Statements Concerning Settlement "Consideration" And
The Fairness Plaintiffs' Receiving Shares in Tri-way ........................................... 5

II.    STANDARDS FOR FINAL APPROVAL OF A DERIVATIVE SETTLEMENT ........... 8

III.    THE SETTLEMENT SHOULD BE APPROVED ............................................... 9

    A.    The Settlement is Procedurally Fair ............................................................... 9

    B.    The Settlement is Substantively Fair ............................................................ 10

IV.    CONCLUSION ............................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re AOL Time Warner S'holder Deriv. Litig.*,
   2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ........................................................8, 9

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..........................................................................10, 11

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) .................................................................................11

*Mathes v. Roberts*,
   85 F.R.D. 710 (S.D.N.Y. 1980) ..............................................................................9

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ...................................................................................9

*In re Metro. Life Deriv. Litig.*,
   935 F. Supp. 286 (S.D.N.Y. 1996) ..........................................................................9

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................9

*In re Pfizer Inc. S'holder Deriv. Litig.*,
   780 F. Supp. 2d 336 (S.D.N.Y. 2011) ............................................................8, 9, 11

*Schimmel v. Goldman*,
   57 F.R.D. 481 (S.D.N.Y. 1973) ..............................................................................8

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*,
   396 F.3d 96 (2d Cir. 2005) ......................................................................................9

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ......................................................................................8

**Other Authorities**

F.R.C.P. 23.1 ............................................................................................................5

## I.   FACTUAL BACKGROUND

As the Court is already familiar with the history of this litigation, this motion for final approval ("Motion") will only address the facts directly pertinent to the Court's July 23, 2020 order. ECF No. 98.

### A.   The Settlement Negotiations

The general outline of the proposed settlement before the Court was negotiated over the course of one day during October 2019 in Hong Kong. ECF No. 91 ("First Halesworth Decl.") ¶ 23. During that meeting, Sino Agro Food, Inc. (the "Company" or "SIAF") and its CEO, Mr. Solomon Lee ("Lee") explained the Company's need for financing, and Plaintiffs made it clear that the Company must cease using shares as collateral for loans. *Id.* ¶¶ 24-26. The parties agreed that continued litigation would not benefit the Company and shook hands on a plan to end the present litigation and work collaboratively to turn around the Company through various corporate governance reforms. *Id.* ¶¶ 27-29.

Having agreed in principle to settle, the parties moved to dismiss. *Id.* ¶ 29. Plaintiffs—who were dismissing their first federal derivative litigation—were unaware of the strictness of the notice and approval requirement. *Id.* When the Court vacated the dismissal, the parties resumed negotiations to finalize the terms of their agreement. *Id.* ¶ 30. They signed the proposed settlement on June 27, 2020. *Id.* ¶¶ 31-39; *see also* ECF 90-3 (Exhibit A to the Motion for Preliminary Approval, hereinafter "Proposed Settlement").

### B.   The Reforms Contemplated By The Proposed Settlement

The Proposed Settlement requires the establishment of a Corporate Governance Committee that will reform how the Company conducts related-party transaction disclosures. Proposed Settlement, at 2. The Company will appoint an independent director to its own board and audit committee and support another independent director nominee to the Tri-way board and audit

committee. *Id.* These independent directors shall hold a veto over any future share issuances by the Company. *Id.* The practice of issuing shares to collateralize loans, a major complaint of the Plaintiffs as outlined in the amended complaint, will immediately cease. *Id.* The Company will also search for and appoint a qualified CFO, who will put its finances in order. *Id.* Defendant Lee has further agreed to explore a sale or sunset of his supermajority-voting A-shares. *Id.* at 3.

### C.    Provisions of Lee's Shares To The Shareholder-Plaintiffs

The Proposed Settlement calls for Mr. Lee to personally give 250,000 Tri-way shares to Heng Ren and 1,000,000 Tri-way shares to Apollo. *Id.* at 4. These shares will come from Lee's own holdings, and not from the Company. The Proposed Settlement does not call for payment of any kind by the Company: the Company does not have to pay for Plaintiffs' attorneys, for which Plaintiffs incurred more than $200,000 in legal fees and expenses. The Company will also not have to compensate Plaintiffs' independent director appointees, though independent director salaries are routinely paid by companies—including this one. *See* ECF No. 90-1, at 18-19.

### D.    Developments Since The Preliminary Approval Motion

Additional factual developments bear on the Court's consideration of this Motion.  On July 14, 2020, a day before the Preliminary Approval Motion was filed, SIAF disclosed that it was delaying its 2019 Form 10-K annual report filing. Ni Final Approval Decl. Ex. A. The disclosure also stated that, because of the delay, SIAF will drop "to the pink sheets" on August 1, 2020. *Id.*

On July 15, 2020, Plaintiffs filed the Preliminary Approval Motion. ECF Nos. 90-94.

Sometime in early August, 2020, the Company's stock was downgraded to the "pink sheets."[1] According to the official website of the OTC Markets Group, which operates the Pink

---

[1] OTC Markets webpage for SIAF, showing "Pink No Information". Available at: https://www.otcmarkets.com/stock/SIAF/overview (last accessed September 12, 2020).

Sheets, the "Pink Market" includes "penny stocks and shells, as well as distressed, delinquent, and dark companies not willing or able to provide information to investors. … The Pink Market is for professional and sophisticated investors with a high risk-tolerance for trading companies with limited information available and limited regulatory oversight. Investors are strongly advised to proceed with caution and thoroughly research companies before making any investment decisions."[2]

In late-2018, after purchasing SIAF shares, Heng Ren had commissioned an on the ground investigation of Tri-way's operations. First Halesworth Decl. ¶¶ 10-14.  The investigation revealed undisclosed operational problems that prompted Heng Ren to bring suit. *Id.*

In August 2020, after it learned about the delay in SIAF's 10-K filing and consequent demotion of the stock to the Pink Sheets, Heng Ren again commissioned a due diligence firm in China to investigate the current state of Tri-way Inc.'s assets in China. *See* Second Declaration of Peter Halesworth ("Second Halesworth Decl.") ¶ 2.

SIAF had disclosed in its 2013 Form 10-K that it would form a company named "Zhongshan A Power" with a group of businessmen in China to operate a series of aqua farms near the city of Zhongshan, in Southern China. Ex. B, at 3.

SIAF also disclosed in its April 15, 2019 Form 10-K annual report filing that Tri-way's operations consisted of five aqua farms, three of which, Aqua Farms 2, 4, and 5 were being operated by "Zhongshan A Power." Ex. C, at 10, 18, 25[3] (SIAF annual report for the fiscal year ended December 31, 2018, which identified the Zhongshan A Power-operated Prawn Farm 2 as

---

[2] Information For Pink Companies. Available at: https://www.otcmarkets.com/corporate-services/information-for-pink-companies (last accessed September 12, 2020).

[3] Pagination on Exhibit C refer to internal page numbers printed onto original SEC filing, and not to pagination to the PDF file itself.

Aqua Farm 2 and the Zhongshan New Prawn Project as Aqua Farms 4 and 5, and noting that all of these farms were being developed by "ZSAPP", *i.e.* Zhongshan A Power.)

Two more Aqua Farms, farms 1 and 3, were operated by two other Tri-way affiliates known as Jiangmen City A Power Fishery Development Co. Ltd. ("JFD") and Enping City A Power Prawn Culture Development Co. Ltd. ("EBAPCD"). Ex. C, at 4, 6, 10, 18.

In other words, as of the beginning of 2019, Tri-way's assets consisted of five Aqua Farms, the majority of which—Aqua Farms 2, 4, and 5—were being developed by Zhongshan A Power. *Id.* at 10, 25. SIAF owns 36.6% of Tri-way. *Id.*

Accordingly, Heng Ren instructed the diligence firm it commissioned to visit the sites of the Zhongshan A Power farms and report on their condition. Halesworth Decl. ¶¶ 3-5.

Over four days between September 5 and September 8, 2020, diligence personnel visited Zhongshan A Power's offices at the sites of Aqua Farms 4 and 5. *Id.* It responded with its findings on September 9, 2020. *Id.*

During its visit to the two Aqua Farms, the diligence firm found a court-issued seal pasted to and sealing the front doors of one of the main on-site buildings. Ex. D, at 5. The seal stated: "Seized by The First People's Court of Zhongshan City on August 22, 2020." *Id*. According to the accompanying court order and seizure notice, "Zhongshan A Power", the operator of Aqua Farms 2, 4, and 5, owed over 2.57 million RMB in rent (approx. $377,000). *Id.* at 1-4. Concurrent with filing suit for back rent, the landlord had obtained a pre-judgement asset attachment. *Id.*

In short, it now appears that Tri-way's main Aqua Farm operator has been so short on funds that it has been unable to pay rent on three of Tri-way's Aqua Farms—SIAF's the "crown jewel". Ex. E, at 5 (SIAF press release of first quarter 2019 operating results, describing Tri-way as the "crown jewel" of the business while acknowledging that it was "constrained by working capital.")

### E.       Response From Shareholders

On July 18 and 19, 2020, days after the filing of the preliminary approval motion, two individual shareholders, Brent Rogers and David L. Karmol, separately wrote to the Court with their views concerning the proposed settlement. ECF No. 96. Both supported the settlement but expressed concern about the Tri-way shares proposed to be transferred to the Plaintiffs. *Id.*

On September 11, 2020, Mr. Rogers wrote to counsel for Plaintiffs, stating that he was "reaching out to Mr. Halesworth to see if there is anyway [*sic*] we might be able to help in his efforts to make SIAF a healthier company." Ex. F. Mr. Rogers noted that he represented a group of investors holding at least "6 million shares" of SIAF—more than 10% of the current outstanding shares. *Id.*[4] As he stated: "[w]e realize you reached out years ago to join the lawsuit but at the time we were skeptical. We didn't know much about you and thought it might be detrimental to the Company. We were obviously very wrong." *Id.*

As of this filing, Plaintiffs have not received any additional communication from investors.

### F.       The Parties' Prior Statements Concerning the Settlement And The Fairness Plaintiffs' Receiving Shares in Tri-way

In response to the Court's Order to Show Cause, the parties submitted on February 14, 2020 that they had "entered into a non-monetary settlement" and that "[n]o consideration is required to be paid any of the Parties or their counsel in connection with the settlement." ECF No. 79. When the Court ordered the parties to seek court approval and provide notice pursuant to F.R.C.P. 23.1, Plaintiffs engaged new counsel, researched their obligations, finalized the Proposed Settlement, and notified all shareholders. ECF Nos. 88, 90-94, 99.

---

[4] *See* Ex. C, at 1 (disclosing approximately 49.8 million outstanding shares).

On July 23, 2020, the Court preliminarily approved the Proposed Settlement and asked that the parties be prepared to "address, among other things, (1) how to square the existence and terms of the June 27, 2020 Settlement Agreement with the letter of February 14, 2020 …; and (2) the fairness and reasonableness of Plaintiffs' receiving shares in Tri-way." ECF No. 98.

Plaintiffs admit that in hindsight, better words should have been chosen in the February letter. Plaintiffs express their regret to the Court for any confusion engendered by that letter. Respectfully, however, there was no intention to mislead and Plaintiffs did not at the time, and still do not, view the Tri-way shares they are requesting approval for to be "monetary" "consideration", made in exchange for dismissing the case. Second Halesworth Decl. ¶¶ 12-15. There are several reasons for this.

*First*, in February and at the time of submitting the Preliminary Approval Motion, Plaintiffs treated the Tri-way shares as no realizable present value for a variety of reasons. These include, for example, the fact that the despite owning 36.6% of Tri-way, SIAF had a per share value of $.0.08 and a market capitalization of only $3.9 million. ECF. No 90-1, at 20. That valuation represents a decline of more than 99.4% from the stock's May 1, 2015 high of $14.20 per share. *Id.* at 1. Thus, even assuming they could be sold, which they could not be, the market itself valued the Tri-way shares Lee would give up to Plaintiffs at a maximum of $132,500 just prior to the Preliminary Approval Motion—less than Plaintiffs' litigation costs. ECF No. 90-1 § II.B.[5]

The long, steady cratering of SIAF's market value is not coincidental—the Company has been badly run for a long time. *Id.* § I & II.A. The results of Heng Ren's most recent diligence,

---

[5] Importantly, since the filing of the motion for preliminary approval, SIAF's market capitalization has <u>more than tripled</u>, with the per share price going from $0.08 to $0.25. Plaintiffs submit that this market response is the most objective reflection of the market's view of the proposed settlement.

showing that Tri-way's farm operator has been unable to pay rent on a large swath of its most valuable assets, is a reflection of this reality: the Company is facing serious cashflow problems. The news only reinforces Plaintiffs' belief that the Tri-way shares they are seeking approval for are currently of no realizable value, and that any future value they may have is highly speculative and doubtful at the moment. Second Halesworth Decl. ¶¶ 12-15.

*Second*, Plaintiffs had advocated for years on behalf of shareholders. ECF No. 90-1 § II.A. They were forced to file suit when their advocacy failed to align management with shareholders. *Id.* § II.B. Unable to find any law firm to take the case on contingency, and with no other shareholders interested in sharing the costs of litigation, Plaintiffs paid the costs of this case themselves. *Id.*

Having fought for years to advocate for the Company's shareholders at their own cost, Plaintiffs saw themselves as fully aligned with fellow shareholders—who would benefit from their efforts. First Halesworth Decl. ¶¶ 41-49. To Plaintiffs, the many governance reforms, concessions from management, and board seats obtained in negotiation were the "consideration" for dismissing the litigation—not the highly speculative Tri-way shares. Second Halesworth Decl. ¶¶ 13-15.

In addition, by the time of the first voluntary dismissal, Plaintiffs had sustained nearly $200,000 in upfront costs to obtain the management concessions and did not wish to sustain more costs if they did not have to. *Id.* ¶¶ 9-11. In seeking to dismiss voluntarily, they were opting for what they believed to be the more efficient option. Furthermore, Plaintiffs' proposed service on SIAF and Tri-way's boards should also be appropriately incentivized. *Id.* ¶ 15; ECF No. 90-1 § II.B. Wishing to preserve the Company's cash, Plaintiffs did not seek any payment from the Company to reimburse counsel expenses nor to pay for their board service.  Rather, reflecting their

belief that there is still an opportunity to turn the Company around through Tri-way, Plaintiffs agreed to accept Tri-way shares from Defendant Lee instead. Second Halesworth Decl. ¶ 16.

*Finally*, because Tri-way's shares are unlisted, illiquid otherwise, and cannot be sold, they can generate no monetary value until they are listed on an exchange. ECF No. 90-1 § IV.B. The result of the latest diligence on the Tri-way Aqua Farms shows that any such listing is far from even the realm of contemplation at the moment—no exchange will consider listing a company that cannot pay rent on its best assets.  Accordingly, from Plaintiffs' perspective—informed by years of extensive private diligence and advocacy against management—the shares did not have, and still do not have any "monetary" value. *Id.* ¶¶ 14-15.

In sum, rather than amounting to any "consideration", the Tri-way shares are more appropriately characterized as a contingent incentive—valuable only if Plaintiffs succeed in turning the company around.  If they do not, the shares will continue to have zero value.

## II. STANDARDS FOR FINAL APPROVAL OF A DERIVATIVE SETTLEMENT

On a hearing for final approval of a derivative settlement, "'[t]he central question is whether the compromise is fair, reasonable and adequate.'" *In re Pfizer Inc. S'holder Deriv. Litig.,* 780 F. Supp. 2d 336, 340 (S.D.N.Y. 2011) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Metro. Life Deriv. Litig.*, 935 F. Supp. 286, 291 (S.D.N.Y. 1996)). Final approval is warranted if "the compromise 'fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted.'" *In re AOL Time Warner S'holder Deriv. Litig.*, 2006 WL 2572114, at *2 (S.D.N.Y. Sept. 6, 2006).

Public policy strongly favors settlements of complex litigation, and of shareholder derivative litigation in particular, because is it "'notoriously difficult and unpredictable.'" *AOL*, 2006 WL 2572114, at *3; *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973) (same). Additional "weighty justifications" for the general public policy favoring settlements include "the

reduction of litigation and related expenses." *Weinberger*, 698 F.2d at 73. Consistent with these policies, the Court's role is to determine whether the Derivative Settlement is "'fair, reasonable and adequate,'" *In re Metro. Life*, 935 F. Supp. at 291, and "'fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted.'" *Mathes v. Roberts*, 85 F.R.D. 710, 713 (S.D.N.Y. 1980).

There is a "strong initial presumption" that a proposed settlement negotiated at arm's-length is fair and reasonable. *Strougo*, 258 F. Supp. 2d at 257; *see also Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Similarly, the recommendation of informed, experienced counsel to approve a settlement reached at arm's-length is entitled to "great" or "considerable" weight. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997); AOL, 2006 WL 2572114, at *3 (giving "considerable weight" to counsel's recommendation to approve settlement). As such, to determine whether to finally approve a derivative settlement, Courts consider both procedural and substantive fairness. *See AOL*, 2006 WL 2572114, at *3; *Pfizer*, 780 F. Supp. 2d at 340 (S.D.N.Y. 2011). Here, the Derivative Settlement is both procedurally and substantively fair, and should be finally approved.

## III.   THE SETTLEMENT SHOULD BE APPROVED

### A.   The Settlement is Procedurally Fair

Procedural fairness refers to the process by which a settlement was reached. In this respect, courts in the Second Circuit "pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the [corporation's] interests." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citation and internal quotation marks omitted; second bracketing added).

As set forth in the Preliminary Approval Motion, Mr. Fredly and Heng Ren are shareholder-plaintiffs who have been investors of the Company since 2016 and 2018, respectively. ECF No. 90-1 § II.A. They separately investigated the claims asserted, made demands on the Company, engaged counsel to prepare for litigation, and eventually came together to prosecute this action. *Id.* After an amended complaint and a renewed motion to dismiss, the two sides met once in Hong Kong in October 2019, where the parties agreed on a handshake to work together to turn the Company around. First Halesworth Decl. ¶ 28. Then, after several months of follow-on negotiations to hammer out the final terms of the Proposed Settlement, management agreed to effectively ***all*** the shareholder-plaintiffs' demands. *Id.* ¶ 36.

Since then, the parties have continued to be at arms-length. Accordingly, Plaintiffs are continuing to diligently monitor SIAF and Tri-way's business. Second Halesworth Decl. ¶¶ 2-6.

Indeed, the latest revelations from their diligence efforts only underscores the urgent need for the Plaintiffs' involvement in Company supervision. Plaintiffs continue to believe that they can introduce fiscal discipline and improve the presently dire cashflow situation. Furthermore, better governance—overseen by Plaintiffs' board appointees—will allow SIAF to attract additional capital. *Id.* ¶¶ 15-16, 20. Plaintiffs believe they have a chance to turn the Company around, and respectfully request that they be given the opportunity to do so.

### B.    The Settlement is Substantively Fair

The Second Circuit has established factors for the consideration of whether class action settlements are substantively fair. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). Courts evaluating the substantive fairness of a derivative settlement adapt the *Grinnell* factors to the following: "(1) the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial; (2) the likelihood of success in light of the risks posed by continued litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder

objections to proposed settlement." *Pfizer*, 780 F. Supp. 2d at 340; *see also Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000) (applying Grinnell factors in shareholder derivative action).

Here, the relevant *Grinnell* factors strongly support final approval of the Derivative Settlement. In particular, factors one through three have already been extensively discussed in the Motion for Preliminary Approval and require no repetition here. ECF No. 90-1, at 12-17.

As to factor four, so far, Plaintiffs are aware of no objections to the proposed governance and disclosure reforms. Indeed, both of the shareholders whose letters were posted to the docket after July 15, 2020 supported all of the reform measures in the Proposed Settlement. Of the two, one, Mr. Brent Rogers, has since written to Plaintiffs directly to express his support. Ex. F, at 1 (stating that he represented more than 10% of the shareholder base). Likewise, Mr. Karmol's letter began by stating that "first and foremost, I encourage the Court to expedite the approval of this settlement, as the expressed goals of the settlement (listed in four bullet points) are shared by me, and I suspect by most shareholders." ECF No. 96, at 3.

Mr. Karmol's only objection to the settlement terms was to the Plaintiffs' February 14, 2020 submission, which he considered a "false representation to the Court" that "should not be tolerated." *Id.* at 4. Respectfully, as set forth above, Mr. Karmol's view on this point is incorrect and does not take into account the realities that Plaintiffs were aware of at the time they entered into negotiations with Mr. Lee: the Company is teetering on the edge, the published financials are not reliable, and the Tri-way shares are highly speculative, have little to no present value, and cannot be monetized for the foreseeable future.

Indeed, Plaintiffs believe that their willingness to sit on the board and impose fiscal discipline to be the only hope for the Company. Second Halesworth Decl. ¶ 20. The latest news concerning Tri-way's cash situation only makes that reality clearer.

IV.    **CONCLUSION**

Given that SIAF is already a penny stock and Mr. Lee still holds supermajority shares, the Proposed Settlement is not merely an excellent result for shareholders, it is the only achievable forward-moving result in the present circumstances that has any real chance to bring about a turnaround for the Company. The alternative is the possible, indeed likely, collapse of the Company and the complete loss of investment by all shareholders. Accordingly, Plaintiffs respectfully submit that the Settlement is fair, reasonable and adequate and should be approved. Should the Court approve the settlement, Plaintiffs will immediately get to work to rectify the dire situation the Company is in.

Respectfully Submitted,

Dated: September 15, 2020                          **AFN LAW PLLC**

By: _____

                                 Angus F. Ni
                                 387 Park Ave S, 5th Floor,
                                 New York, NY 10016
                                 (646) 453-7294
                                 angus@afnlegal.com

                                 *Attorney for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 15, 2020, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Richard Babnick [RBabnick@SRF.LAW](mailto:RBabnick@SRF.LAW)

*Attorney for Defendants*

By:     <u>/s/ *Angus F. Ni*</u>
Angus F. Ni