UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARNE H. FREDLY, HENG REN SILK ROAD INVESTMENTS LLC, HENG REN INVESTMENTS LP, derivatively on behalf of SINO AGRO FOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SINO AGRO FOOD, INC., LEE YIP KUN SOLOMON, TAN POAY TEIK, CHEN BOR HANN, LIM CHANG SOH, <br><br> Defendants. <br><br> And <br><br> SINO AGRO FOOD, INC., <br><br> Nominal Defendant. | Case No. 1:19-cv-02680 (JMF) <br><br> DECLARATION OF PETER HALESWORTH IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT |

**DECLARATION OF PETER HALESWORTH
IN SUPPORT OF THE MOTION FOR FINAL APPROVAL
OF DERIVATIVE SETTLEMENT**

I, Peter Halesworth, on behalf of Heng Ren, hereby declare as follows:

1. I am a United States Citizen residing in Massachusetts, I am over the age of 18 and have personal knowledge of the matters that I am declaring to here. I declare under penalty of perjury pursuant to 18 U.S.C § 1621 as follows:

2. In August, 2020, after I learned about the delay in SIAF's 10-K filing and consequent demotion of the stock to the Pink Sheets, I commissioned a due diligence firm in China to investigate the current state of Tri-way Inc.'s assets in China..

3. Because Tri-way's aqua farms have been touted as among SIAF's most important assets, I instructed the diligence firm I commissioned to visit the sites of Aqua Farms 4 and 5 and report on their condition.

4. Over four days between September 5 and September 8, 2020, the firm I engaged visited the sites of Aqua Farms 4 and 5.

5. It replied with its findings on September 9, 2020.

6. I was informed that the firm found a court-ordered pre-judgment asset attachment seal pasted to the front door of one of the buildings the site. The diligence firms sent me photos of the court order, which I have provided to my attorney. These revelations only reinforce my prior, stated belief that Tri-way's shares presently don't offer realizable value.

7. I have been informed by counsel that the Court has asked for an explanation of the parties' February 14, 2020 letter stating that no consideration was being paid in exchange for the settlement and that the settlement was non-monetary.

8. There are two primary reasons for that letter. I will do my best to explain.

9. First is the motivation. As I stated in my first declaration, we had already shouldered almost two hundred thousand dollars in out of pocket costs at the time we began

negotiating with Lee, not counting the enormous amount of time both myself and Mr. Fredly had spent advocating, researching, investigating, and suing.

10. Our attorneys were expensive, and we were of the opinion that drafting another set of motions to seek approval would cost tens of thousands of dollars that we would have preferred to avoid. Having managed to get Lee to the negotiating table and having obtained concessions in principle, we felt like we had achieved our goals. Thus, already exhausted from the effort and costs, we did not wish to dump more money down the drain and spend more valuable time on the litigation if we did not have to.

11. Accordingly, the main motivation for our asking the Court for a speedy, voluntary dismissal without notice was not to hide anything, but rather to save costs.

12. Second, the content of the letter was also accurate to the best of our understanding and informed by advice of counsel. In particular, we did not believe at the time of the February 14, 2020 letter—and still do not believe—that any shares that Lee may transfer to us constituted "consideration" for dismissing the suit, nor that they could be called "monetary." This is because they were, and still are, not realizable unless we turn the Company around over the coming years.

13. In our view, the "consideration" we obtained in exchange for settling the case was the governance concessions we achieved and the agreement from Lee to immediately stop collateralizing loans with SIAF stock.

14. As for the illiquid Tri-way shares that would become valuable only if (and it is a big if) we manage to: (i) discipline SIAF finances; (ii) get additional capital; (iii) turn around operations; and (iv) successfully get Tri-way listed on the Hong Kong stock exchange—these have no realizable value right now. Thus, my fund will assign these shares zero value on the balance sheet if the court approves the settlement.

15. Because of all the ifs that must occur before these shares can have value, and because we are not going to even be compensated by the Company to serve on SIAF and Tri-way's board, these shares are more appropriately labeled as an incentive—valuable only if we succeed.

16. Finally, we knew that the Company had cash difficulties, and that it needed capital to improve its operations. So we did not ask for any cash payment, nor any annual stipend for board service—we were willing to take the risk that the Tri-way shares we got may ultimately be worthless. Of course, if we succeed, they could become valuable, in which case other SIAF shareholders also benefit.

17. In hindsight, we should have just submitted notice and sought approval. This new round of motions has only been made more complicated by our earlier desire to save money.

18. But, at the time, we were motivated by legitimate concerns, were advised by counsel, believed that our representations were accurate, and had no intention to mislead.

19. I hope my above explanation is clear and that Court will understand that the conditions we were operating in and the information we had informed our statements to the Court.

20. Should the Court approve the settlement, we plan to immediately obtain our appointments to the SIAF and Tri-way boards, seek information, clean up finances and company disclosures, and start driving a turn-around. We may or may not succeed, but I believe that the Company will head in the wrong direction without our involvement and that our intervention is the best and only hope for a turn-around.

I declare under the penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

Dated: September 15, 2020     By: _____
                                  Peter Halesworth